**E. R. SQUIBB & SONS v. HELVERING, Com'r of Internal Revenue.**

**No. 233.**

Circuit Court of Appeals, Second Circuit.

July 12, 1938.

Cravath, de Gersdorff, Swaine & Wood, of New York City (William D. Whitney, Joseph C. White, and Thomas F. Boyle, all of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order, assessing a deficiency on the taxpayer's income tax return for the year 1932. The taxpayer is a large manufacturer of drugs and other chemicals, which in the year 1929 devised a plan to allow its customers to share in its

profits. They were to take stock in a corporation organized by the taxpayer under the name of Squibb Plan, Inc., whose assets were to consist of shares of stock of the taxpayer, bought by it and sold to Squibb Plan, Inc. at $50 a share—a price below its market value at the time, but higher than in 1932. The taxpayer, as required by its contract, continued to buy its shares as they fell, and in 1932, sold a number of them to Squibb Plan, Inc. Because of the fall it realized a substantial profit, which the Commissioner included in its income for that year and on which he calculated a deficiency. The taxpayer appealed to the Board and then to this court from the Board's affirmance.

The definition of gross income—§ 22 of the Revenue Act of 1932, 26 U.S.C.A. § 22 —is in too general terms to throw any light upon the question at bar; but from 1918 to 1932 the regulations of the Treasury provided that the proceeds of the original sale of capital shares—whether more or less than par value—were capital; that purchases by the corporation of its own shares would be considered capital transactions; and that no resulting gain should be income: "the corporation realizes no gain or loss from purchase or sale of its own stock". This remained through five recensions of the tax laws—1921, 1924, 1926, 1928 and 1932—but on May 2, 1934 it was changed to the form shown in the margin.[1] The taxpayer insists that the amendment does not by its words cover the transaction in question; and that if it did, it would be unlawful, because the earlier regulation had received an authoritative interpretation through the long acquiescence of Congress, just noted. Brewster v. Gage, 280 U.S. 327, 336, 337, 50 S.Ct. 115, 117, 74 L.Ed. 457; Poe v. Seaborn, 282 U. S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Mc-

Caughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183; Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756; McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304; United States v. Farrar, 281 U.S. 624, 50 S.Ct. 425, 74 L.Ed. 1078, 68 A.L.R. 892.

We share the taxpayer's doubts whether it dealt "in its own shares as it might in the shares of another corporation", within the very equivocal language of the regulation. It is at least arguable that this means to cover only speculations of a corporation, and not a profit-sharing enterprise like that at bar. But in any event it seems to us that the uniform interpretation, so long placed upon § 22(a), 26 U.S.C.A. § 22(a), by the regulation and confirmed by the inaction of Congress, was imbedded in the statute so deep that only legislation could dislodge it. We need not say that no other interpretation could have been made: it is not uncommon, when a corporation buys its own shares, to regard them as still existing in a kind of limbo, so that when it sells them again, it does not reissue them de novo, but sells its own property. That convention may be sufficient constitutional basis for a statute which should tax as income the difference between the amount paid to buy in "treasury shares" and that received on their sale; we do not mean to suggest the opposite, for in such matters convention may be conclusive. Nevertheless it is very difficult—indeed to us it seems impossible— to understand how the notion of a gain to the corporation from such transactions is legally tenable, except when the sale of the shares is at a price higher than their real value at the time of the sale. Such a belief must depend upon the mistaken supposition that after purchase the shares have

---

[1] "Acquisition or disposition by a corporation of its own capital stock.— Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But where a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of applicable statutes."

an existence as such, and are more than a mere power to issue shares, like authorized, but unissued, shares. This seems to us unsound. Borg v. International Silver Company, 2 Cir., 11 F.2d 147.

If one regards the corporation as the group of its shareholders collectively, that is very apparent. If they sell "treasury shares", bought at a lower price, what really happens is that the group has been enlarged; new shareholders have been added. Always assuming that the shares are sold at their true value, the old group has not profited because the sale of the "treasury shares" leaves the value of their own shares absolutely untouched. The purchase price received for each "treasury share" sold will by hypothesis exactly match the value of each old share, and the sold share will neither trench upon, nor leave any margin of profit for, the old shares. All that has happened is that a larger group is doing business with a proportionally increased capital. The same is true also, if the corporation be regarded as a juristic person, stricti juris. Before the sale of "treasury shares" the corporation is liable to its shareholders in the sum of their claims against it, which equal the net value of its then assets, including any increase in their value during the period when the "treasury shares" have been held. The corporate assets are of course increased by the sale, but the new shares create new liabilities which will precisely equal the increase, and there can be no profit to the corporation. The only escape from this is to treat the corporation as so completely independent of its shareholders, that its obligations to them should be disregarded in figuring its gains or losses. But to do that would completely distort the corporate income, and charge it as profit with all that it receives when it sells "treasury shares", and to credit it as loss with all that it pays to purchase them. Indeed, the whole reasoning which supports the emergence of profit from such transactions presupposes that the corporation has relieved itself of an obligation when it buys a share and creates one when it sells one. Since on analysis this appears to be legally untenable, it is plain that the original interpretation of the Treasury was at least permissible. We agree rather with J. R. Reynolds v. Com'r, 4 Cir., 97 F.2d 302, than with First Chrold Corp. v. Com'r, 3 Cir., 97 F.2d 22.

We must not be misled by those cases in which the corporation is held to have realized a gain in property sold to its shareholders for its own shares. Dorsey Co. v. Com'r, 5 Cir., 76 F.2d 339; Allyne-Zerk Co. v. Com'r, 6 Cir., 83 F.2d 525. The question there is whether the cost of the property is less than what the corporation receives for it. The purchase price is measured by the extent by which the remaining shareholders profit by the retirement of the shares of the buyers; and is the full value of their shares at the time of the transaction. So too, when, as in Com'r v. S. A. Woods Machine Co., 1 Cir., 57 F.2d 635, the corporation takes over and retires outstanding shares in settlement of a claim whose cash payment would have been wholly income. In both situations the remaining shareholders are enriched by the full present value of the shares; and this is part income, or all income, according as the consideration given in exchange had or had not any "basis".

In the foregoing we have excluded the possibility that at the time of sale to Squibb Plan, Inc. the shares had a value of less than $50. In fact they may have had, and if so, the question would necessarily arise whether there was a profit in this difference, and whether the former regulation forbad its taxation, or only covered differences between the prices at which shares might be bought in and later sold. My brothers believe that we should now decide both questions; they think that such a difference is taxable income and that the regulation did not forbid its taxation. I am not prepared to dissent, but the point has not been argued, and, had I been alone, I should have referred it back to the Board along with the determination of the value of the shares at the time of their sale. The order will be reversed, and the cause remanded to the Board, to assess any deficiency based upon differences between the sale price, $50, and the value of the shares at the time of sale.

Order reversed; cause remanded.