NATIONAL HOME OWNERS SERVICE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91445. Promulgated April 12, 1939.

*Robert F. Skutch, Jr., Esq.*, and *Herbert C. Moore, Esq.*, for the petitioner.

*Clay Holmes, Esq.*, for the respondent.

OPINION.

MURDOCK: The first question is whether the petitioner realized any gain from the transactions in 1934 and 1935 whereby it received $100 per unit for units consisting of one class A share and seven class B shares of its own stock. The Supreme Court recently reviewed this question in *Commissioner* v. *Reynolds Tobacco Co.*, 306 U. S. 110, affirming 97 Fed. (2d) 302, which reversed 35 B. T. A. 949. See also *First Chrold Corporation* v. *Commissioner*, 306 U. S. 117, reversing 97 Fed. (2d) 22, which had affirmed an unpublished decision of the Board. The Court stated in the *Reynolds* case that the statutory provisions of section 22 (a) were so general in their terms as to render an interpretative regulation appropriate. The regulations of the Treasury Department up to May 2, 1934, had uniformly held that a corporation realized no gain and sustained no loss from purchases and sales of its own stock. The Board had consistently followed those regulations, but on April 7, 1932, the Circuit Court of Appeals for the First Circuit reversed the decision of the Board in *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635, reversing 21 B. T. A. 818. Certiorari was denied, 287 U. S. 613. The Commissioner thereafter issued T. D. 4430, approved May 2, 1934, reported in C. B. XIII-1, p. 36. That Treasury decision amended the regulations to provide that gain or loss might result from the acquisition or disposition by a corporation of its own shares, depending "upon the real nature of the transaction"; no gain or loss was to result from the original issuance of stock, "But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another." Although there might be some question whether this petitioner was dealing in its own stock as to all of the shares involved within the meaning of the language just quoted, nevertheless, the Treasury decision seems clearly to cover some of the transactions. The Court in the *Reynolds* case pointed out that the administrative construction embodied in the regulation had been uniform for a great many years during which Congress had reenacted without alteration the definition of gross income, and the Court said:

\* \* \* Under the established rule Congress must be taken to have approved the administrative construction and thereby to have given it the force of law.

It held that the tax liability for the year 1929 was to be determined in conformity to the regulation then in force.

The transactions involved in the present case took place in 1934 and 1935, some of them before and others after the change in the regulation of May 2, 1934. The bill which formed the basis of the Revenue Act of 1934 passed the House on February 21. The Senate

made some changes and passed the bill on March 28. The final changes were agreed to by both Houses on May 3, 1934. The act was approved on May 10, 1934. The legislative history does not indicate that the change in the regulation of May 2 was ever brought to the attention of Congress. Congress, in enacting that act, can not be presumed to have had in mind the regulation as amended. Since Congress had given the old administrative construction the force of law, the question arises whether the Commissioner could change the law by amending his regulation or whether a change in the law would have to come from the legislature. Cf. *Squibb & Sons* v. *Helvering*, 98 Fed. (2d) 69. The following is from the opinion of the Court in the *Reynolds* case:

> Section 605 of the Revenue Act of 1928 provides that "In case a regulation or Treasury decision relating to the internal-revenue laws is amended by a subsequent regulation or Treasury decision made by the Secretary or by the Commissioner with the approval of the Secretary, such subsequent regulation or Treasury decision may, with the approval of the Secretary, be applied without retroactive effect". It is clear from this provision that Congress intended to give to the Treasury power to correct misinterpretations, inaccuracies, or omissions in the regulations and thereby to affect cases in which the taxpayer's liability had not been finally determined, unless, in the judgment of the Treasury, some good reason required that such alterations operate only prospectively. The question is whether the granted power may be exercised in an instance where, by repeated reenactment of the statute, Congress has given its sanction to the existing regulation.
>
> Since the legislative approval of existing regulations by reenactment of the statutory provision to which they appertain gives such regulations the force of law, we think that Congress did not intend to authorize the Treasury to repeal the rule of law that existed during the period for which the tax is imposed. We need not now determine whether, as has been suggested, the alteration of the existing rule, even for the future, requires a legislative declaration or may be shown by reenactment of the statutory provision unaltered after a change in the applicable regulation. As the petitioner points out, Congress has, in the Revenue Acts of 1936 and 1938, retained Section 22 (a) of the 1928 Act *in haec verba*. From this it is argued that Congress has approved the amended regulation. It may be that by the passage of the Revenue Act of 1936 the Treasury was authorized thereafter to apply the regulation in its amended form. But we have no occasion to decide this question since we are of opinion that the reenactment of the section, without more, does not amount to sanction of retroactive enforcement of the amendment, in the teeth of the former regulation which received Congressional approval, by the passage of successive Revenue Acts including that of 1928.

The above quotation rather indicates that the Supreme Court agreed with Judge Learned Hand who said in the *Squibb* case that only legislative enactment could change the well established rule of law, and that there was no change, at least until 1936. Even then the Commissioner could not point back to consistent regulations on the subject. We hold that the Treasury Decision of May 2, 1934, is not applicable in the present case and the petitioner realized no gain

from the transactions of 1934 and 1935. *Squibb & Sons* v. *Helvering,* *supra.*[1] This makes unnecessary any decision as to the amount of the gain.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

----

TURNER, concurring: While I agree with the conclusion reached by majority of the Board, I am unable to agree with the reasons expressed therefor.

As I read the facts, the petitioner was not dealing in its own shares "as it might in the shares of another corporation" but, to the contrary, the only purpose sought and accomplished was the adjustment of its capital. In my opinion, therefore, the conclusion reached falls within the wording and spirit of the regulation and there is no occasion here for declaring the regulation invalid. I am further of the opinion that we may not conclude, nor even presume, that, at the time the bill which became the Revenue Act of 1934 was drafted and considered by Congress and enacted into law, both houses of Congress through their committees were not fully aware of the impending regulation which became Treasury Decision No. 4430 and of its actual promulgation prior to the enactment of the Revenue Act of 1934.

SMITH, VAN FOSSAN, LEECH, HARRON, KERN, and OPPER agree with the above.

----

[1] The second opinion of the Circuit Court of Appeals for the Second Circuit in the *Squibb* case (decided March 27, 1939) changes only the final paragraph of the first opinion, which was not relied upon by the Board in the present proceeding.