R. C. REYNOLDS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 98014, 98017.   Promulgated April 29, 1941.

*Hugh Satterlee, Esq.,* and *I. Herman Sher, Esq.,* for the petitioner.
*J. R. Johnston, Esq.,* for the respondent.

**OPINION.**

LEECH: The first issue is whether petitioner realized gain upon the acquisition of 1,340 units of its own stock from Reynolds on June 1,

1935. Respondent has determined a gain of $72,986.40 on this transaction, apparently, under section 22 (a) of the Revenue Act of 1934 and article 22 (a)–16 of Regulations 86. Respondent nowhere indicates how he arrived at the figure of $72,986.40. Presumably, he is taking the position that the fair market value of the stock was considerably higher than the price petitioner paid for it.

Assuming that such was the case, and that the transaction was not a taxable dividend under section 115 (g) of the same act, and was a purchase by petitioner (see *Rollin C. Reynolds*, 44 B. T. A. 342, could petitioner have been in receipt of taxable gain on this transaction under the law as it was in 1935?

Respondent's Regulations 86 were approved on September 6, 1934. Article 22 (a)–16 thereof reads as follows:

*Acquisition or disposition by a corporation of its own capital stock.*—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But where a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of applicable statutes.

Article 22 (a)–16 was taken from T. D. 4430, C. B. XIII–1, p. 36, adopted on May 2, 1934.

Prior to this time, respondent's regulations (typified by Regulations 77, art. 66) had read as follows: "A corporation realizes no gain or loss from the purchase or sale of its own stock."

In *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, the Court held that the ruling embodied in Regulations 86 could not be retroactively applied to a sale of treasury stock by a corporation in 1929, and used this language:

\* \* \* As the petitioner points out, Congress has, in the Revenue Acts of 1936 and 1938, retained Section 22 (a) of the 1928 Act *in haec verba*. From this it is argued that Congress has approved the amended regulation. It may be that by the passage of the Revenue Act of 1936 the Treasury was authorized thereafter to apply the regulation in its amended form. But we have no occasion to decide this question, since we are of opinion that the reenactment of the section, without more, does not amount to sanction of retroactive enforcement of the amendment, in the teeth of the former regulation which

received Congressional approval, by the passage of successive Revenue Acts including that of 1928.

Relying on this language, we held, in *National Home Owners Service Corporation*, 39 B. T. A. 753, that the changed regulations here involved can not be applied to a 1935 transaction, because Congressional approval of the change could not be deemed to have been given in the Revenue Act of 1934, which became law only eight days after the ruling.[2] Congress, we said, had given the older rule the force of law, and it must be applied rather than the later one.

This issue is thus controlled by *Helvering* v. *Reynolds Tobacco Co.* and *National Home Owners Service Corporation* (*supra*), and decision thereon is for petitioner.

Respondent, by way of an alternative position, contends that petitioner was in receipt of income in 1935 to the extent it was freed from its obligation to declare dividends on the shares of preferred stock then repurchased. Respondent is foreclosed in this contention by *Houghton & Dutton Co.*, 26 B. T. A. 52.

Did petitioner derive income in 1934 through the recoveries on accounts previously charged off as worthless and, if so, in what amount? The record shows that it was petitioner's practice to split a bad debt recovery into two parts, reporting as income in the year of recovery only such portion of the recovery as represented the profit on the sale in question and deferring inclusion of the balance until the year in which further attempts at recovery were abandoned. It is well settled that bad debt recoveries should be reported in full as accrued income in the year of recovery and not deferred or split up. *Hartford Hat & Cap Co.*, 7 B. T. A. 714; *Excelsior Printing Co.*, 16 B. T. A. 886; *First National Bank of Key West*, 26 B. T. A. 370; *Lake View Trust & Savings Bank*, 27 B. T. A. 290; *Putnam National Bank* v. *Commissioner*, 50 Fed. (2d) 158; Regulations 86, art. 23 (k)-1. Consequently we do not think petitioner's unusual accounting practice is warranted.

However, respondent is seeking to throw into one year all the recoveries that have not yet been reported. The rule is that recoveries must be fully reported in the year they occur. (See authorities last cited.) Our findings are that only $207.79 was recovered in 1934 on worthless debts and not then reported. To add to this amount recoveries which were made in earlier years and properly so reportable would be to correct the mistakes of past years by incorrectly computing the income of the taxable year. This was expressly forbidden in *Nicollet Associates, Inc.*, 37 B. T. A. 350. We hold that petitioner's 1934 income should be increased on account of recoveries of worthless debts only to the extent of $207.79.

---

[2] Revenue Act of 1934 was approved May 10, 1934.

The third question is whether petitioner is liable for the addition of surtax upon 1935 net income proposed under the provisions of section 102 of the Revenue Act of 1934.[3] Obviously, the petitioner was not organized for the purpose prohibited by that section. Was it availed of for that purpose in 1935? It was not "a mere holding or investment company." Did the "gains and profits" of the company for 1935, which it accumulated and did not distribute, exceed "the reasonable needs of the business"? These are questions of fact—the first being the ultimate issue.

The findings of fact include our computation of surplus of the petitioner, which gives effect to *Rollin C. Reynolds, supra*, and thus treats petitioner's advances to Reynolds as loans. It also includes all of the presently contested recoveries on account of bad debts charged off. The amount of this surplus at January 1, 1935, $357,444.64, is not controlling, but is a circumstance to be considered in determining whether the accumulation of the gains and profits for 1935 was reasonably justified by the needs of the business. *Corporate Investment Co.*, 40 B. T. A. 1156.

It is true that this surplus was substantial and that all of it was represented by loans to Reynolds. But Reynolds was not the sole stockholder. He was not even a majority stockholder. Cf. *Helvering v. National Grocery Co.*, 304 U. S. 382; *Chicago Stock Yards Co.*, 41 B. T. A. 590. The loans were amply secured and bore interest at a rate of from about $2\frac{1}{2}$ to approximately 4 percent, which was paid. *Cecil B. deMille Productions, Inc.*, 31 B. T. A. 1161; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713; *Dill Manufacturing Co.*, 39 B. T. A. 1023. See *Rollin C. Reynolds, supra*. The surplus had been accumulated in years prior to 1930, during which period dividends were regularly paid. In each of the years following, until 1935, the petitioner suffered losses. Its business was contracted by the necessary discontinuance of several of its stores. It was a wholesaler and retailer of furniture. In view of that situation, the use of caution was surely warranted in the distribution, at least, of the first

---

[3] SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year upon the adjusted net income of every corporation (other than a personal holding company as defined in section 351) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting gains and profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following:

(1) 25 per centum of the amount of the adjusted net income not in excess of $100,000, plus

(2) 35 per centum of the amount of the adjusted net income in excess of $100,000.

(b) PRIMA FACIE EVIDENCE.—The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to avoid surtax.

earnings after the five years of consecutive losses. And what were those earnings for 1935 which were not distributed and which must support the imposition of this tax?

In the deficiency notice the respondent determined the net income of petitioner for that year, on which the surtax was there proposed, to be $98,491.16. The computation of that income there disclosed was as follows:

### ADJUSTMENTS TO NET INCOME.

| | | |
|---|---:|---:|
| Net income as disclosed by return | | $20,380.53 |
| Unallowable deductions and additional income: | | |
|   (a) Bad accounts collected | $2,833.24 | |
|   (b) Repairs | 1,228.88 | |
|   (c) Excessive depreciation | 3,011.82 | |
|   (d) Capital gain | 72,986.40 | 80,060.34 |
|     Total | | $100,440.87 |
| Nontaxable income and additional deductions: | | |
|   (e) Installment profits | $1,037.41 | |
|   (f) Treasury bond interest | 162.30 | |
|   (g) Capital stock tax | 750.00 | 1,949.71 |
|     Net income adjusted | | $98,491.16 |

There is apparently no controversy as to any other item appearing in this computation except capital gain in the amount of $72,986.40, which the respondent states in his deficiency notice represented "Profit realized on transfer of stock under the provisions of section 22 and article 22 (a)–16 of the Revenue Act of 1934." But we have already held that petitioner realized no such gain in that transaction. Eliminating that item in the computation of the respondent in his deficiency notice would leave, according to that notice, $25,504.76 as the adjusted net income of the petitioner for 1935. This computation, of course, would be reduced by $749.17 if the net profit as shown by the books of the company, and appearing in the findings of fact, were used instead of the net income disclosed in the return of the petitioner.

However, on brief, respondent shifts his position. He contends that there became available for distribution to shareholders in 1935 the following items:

| | |
|---|---:|
| Net income per books | $19,631.53 |
| Principal amount (interest excluded) of R. C. Reynolds taxes theretofore charged to accumulated surplus | 117,135.22 |
|     Total | 136,766.75 |

Analyzing this statement, $19,444.30 of the "net income per books" consisted of the excess of interest on the tax refund over counsel fees and other expenses of suit.

The tax refund of $117,135.22 was a recovery of part of the cost of capital assets to petitioner. Petitioner had agreed, as part of the consideration for the transfer to it of Reynolds' assets, to assume the tax liability imposed on Reynolds in respect of his conduct of the business prior to incorporation. When the recovery of part of the amount thus paid occurred in 1935, it was merely a partial restoration of that capital cost and did not affect surplus. Having been paid out as a capital item, it was not income upon its recovery. See *Burnet* v. *Logan*, 283 U. S. 404; *Jamieson Associates, Inc.*, 37 B. T. A. 92. Regardless of the manner in which the petitioner treated this item on its books when paid, in our computation of surplus appearing in the findings of fact, neither the payment nor restoration of part of this item is reflected in the surplus account. This, we think, is proper. The entire income for 1935, therefore, as computed in the deficiency notice, is $25,504.76, upon which the proposed imposition of surtax must rest, and as computed by respondent on brief, by using the net income as shown by the books of the company, it is $749.17 less.

The comparatively little savings to the stockholders to be expected by the accumulation of this relatively small amount of income, contradicts rather than supports the existence of the condemned purpose in failing to distribute it in view of the record here. See *Cecil B. deMille Productions, Inc.*, and *Dill Manufacturing Co., supra*. Particularly is this so, in view of the fact that in 1936 and 1937, when petitioner continued to realize income, and in greater amounts, dividends were promptly declared and paid.

Moreover, of this total income of the petitioner for 1935, approximately $19,400 consisted of the excess of interest on the refund over counsel fees and other expenses of the suit therefor. The balance of about five or six thousand dollars, was all of the operating income.

The policy of the company was not to declare and pay dividends unless currently earned and to conserve surplus to protect its financial position during the periods of depression and the reasonably expected years of prosperity and expansion to follow. That policy was followed consistently by the company from its inception through 1934. In the face of this record, we will not say that the accumulation of gains and profits for 1935 was an accumulation not reasonably justified. Cf. *Trico Securities Co.*, 41 B. T. A. 306. And if it were unnecessary, we think any presumption that such accumulation was "for the purpose of preventing the imposition of the surtax upon its shareholders" has been definitely overcome. *Corporate Investment Co., supra*. Respondent is reversed on this issue.

*Decision will be entered under Rule 50.*