**ALLEN, Collector of Internal Revenue, v. NATIONAL MANUFACTURE & STORES CORPORATION.**

No. 9814.

Circuit Court of Appeals, Fifth Circuit.

Jan. 28, 1942.

240

FOSTER, Circuit Judge, dissenting.

———◆———

T. Hoyt Davis, U. S. Atty., of Macon, Ga., and Samuel H. Levy, Sp. Asst. to the Atty. Gen., for appellant.

Welborn B. Cody and Louis Regenstein, Jr., both of Atlanta, Ga., for appellee.

Edward H. McDermott, Wm. M. Emery, and Richard S. Oldberg, all of Chicago, Ill., amicus curiae.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Having pursued and exhausted its administrative remedies, National Manufacture & Stores Corporation filed suit against the Collector to recover an alleged overpayment of income tax for its fiscal year ending June 30, 1937. The case was tried without a jury, and the court entered findings of fact and conclusions of law and entered judgment for the taxpayer allowing a refund of $5,155.30.

The material facts are not disputed. The appellee is a Delaware corporation with its main office in Atlanta, Georgia. Prior to the year 1930 its officers determined that it would be to the best interest of the corporation to purchase and retire shares of its common stock "at such times as it was felt that the stock could be purchased at a price advantageous to the corporation." In pursuance of this policy the corporation has purchased stock from time to time at a price lower than book value, and has retired it. In 1930 and 1931 National purchased 6,900 shares of its stock on the open market for $43,842.50. It was the intention of the company to retire this block of stock. The stock was purchased through Hayden-Stone Company, a brokerage house. The corporation was unable to pay the full purchase price of the stock, and Hayden-Stone Company agreed to accept a fifty per cent payment and keep possession of the stock and carry the balance of the indebtedness. The president of appellee, Mr. Fox, who had charge of the purchase and sale of the 6,900 shares of stock, testified that the stock was bought on "fifty per cent margin".

With the coming on of the depression, National was unable to pay the balance due Hayden-Stone Company. The stock was not cancelled and retired as had been intended, but was held by Hayden-Stone Company and carried on the taxpayer's books as treasury stock at a nominal value of $1 per share. In 1937 the taxpayer's need for cash working capital had increased, and in the same year Hayden-Stone Company made demand for payment. The company thereupon determined to sell the 6,900 shares of common stock. On March 15, 1937, the block of stock was sold to a syndicate of Atlanta brokers for $10 per share, a price below the fair value of the shares and below the market price. From this sale, after deduction of tax and expenses, National realized $68,718.15, being an excess of $24,875.65 over the purchase price of the shares in 1930 and 1931. This excess amount was reported as profit in the corporation's income tax return for the fiscal year ending June 30, 1937, and income tax was paid accordingly. The taxpayer contends here as it did before the Collector and in the court below that this amount was erroneously included in income.

■ The sale of the stock having occurred during the fiscal year ending June 30, 1937, the Revenue Act of 1936 governs

the disposition of this case. Section 22(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 825, provides that "gross income" includes "gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * *." Treasury Regulations 94, promulgated under the Revenue Act of 1936, provides:

"Art. 22(a)-16. *Acquisition or disposition by a corporation of its own capital stock.*—

    *   *   *   *   *   *   *

"But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. * * *"

This provision was also contained in Article 22(a)-16 of Treasury Regulations 86, promulgated under the Revenue Act of 1934.

From 1920 to 1934 the Treasury Regulations under the successive revenue acts provided that where a corporation purchased any of its stock and held it as treasury stock "the sale of such stock will be considered a capital transaction. * * * A corporation realizes no gain or loss from the purchase or sale of its own stock." See Reg. 45, Arts. 542 and 563; Reg. 62, Arts. 543 and 563; Reg. 65, Art. 543 (1924); Reg. 69, Art. 543 (1926); Reg. 74, Art. 66 (1928); Reg. 77, Art. 66 (1932). The regulations were amended on May 2, 1934, by Treasury Decision 4430, XIII-1 Cumulative Bulletin 36, so as to eliminate the provision that "a corporation realizes no gain or loss from the purchase or sale of its own stock", and included in its stead language substantially the same as that in the above quoted provision of Regulations 94, Art. 22(a)-16 (1936), and Regulations 86, Art. 22(a)-16 (1934).

In support of the conclusions and judgment of the court below, the appellee contends that the original Treasury Regulations had acquired the force and effect of law by virtue of the fact that Congress had repeatedly reenacted the revenue act without change in the definition of "gross income" contained in Section 22(a), and that the Treasury Department was without authority to amend or otherwise change the regulations. Cf. E. R. Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69. The Collector, on the other hand, points to the fact that there has been no substantial change in the regulations since 1934, and contends that the administrative practice disclosed by the regulations has been sufficiently long continued and uniform to justify an assumption that Congress has adopted their interpretation by reenacting the language construed by them.

In Helvering v. R. J. Reynolds Co., 306 U.S. 110, 59 S.Ct. 423, 427, 83 L.Ed. 536, the Supreme Court had under consideration the amendment and change in the Treasury Regulations adopted under the revenue acts through 1932. The court held that the amended regulations could not, under the facts there shown, be retroactively applied to cover a transaction consummated in the taxable year 1929. The court did not pass upon the validity of the regulation if prospectively applied. Without deciding the point, the court said, "It may be that by the passage of the Revenue Act of 1936 the Treasury was authorized thereafter to apply the regulation in its amended form."

In the later case of Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 60 S.Ct. 18, 24, 84 L.Ed. 101, the Supreme Court held that a regulation interpreting one act does not become "frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers." Also see Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155.

■ The case at bar does not present a question of retroactive application of regulations such as was condemned in Helvering v. R. J. Reynolds Co., supra., or Commissioner v. Pan-American L. Ins. Co., 5 Cir., 111 F.2d 366. Article 22(a)-16 of Regulations 94 was in full force and effect when National sold its 6,900 shares of stock in 1937. The regulation does not attempt to enlarge, repeal, or modify the statute, and is a valid exercise of the Treasury Department's rule-making power.

■ The appellee further contends that the sale of the stock was purely a capital transaction which did not give rise to income, and that the lower court properly held that even if the questioned regulation be held valid it did not apply to the transaction "for the reason that plaintiff did not deal in its own shares as it might deal in the shares of another corporation." This contention is without merit. The National

Manufacture & Stores Corporation purchased the stock on "fifty per cent margin", carried it on the books for six years as treasury stock, and then sold it and realized $24,875.65 in excess of its purchase price. This excess amount was made available to the corporation, and was used by it to increase its working capital. The taxpayer realized a gain just as if it had purchased the stock of any other corporation on margin on a low market and sold it later at a profit on a higher market. We think it clear that National realized a taxable accession to income in the amount of $24,-875.65, "if we take words in their plain popular meaning, as they should be taken here". United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; Cf. Hammond Iron Co. v. Commissioner, 5 Cir., 122 F.2d 4.

Appellee is not entitled to a refund of the tax paid. The judgment is reversed.

FOSTER, Circuit Judge (dissenting).

I agree that Regulation 94, Article 22 is valid when applied to cases coming under its provisions but I do not consider that the case at bar is at all governed by it. I do not entirely agree with the statement of facts in the majority opinion as certain important evidence is not referred to. Therefore, I will restate the facts as I find them.

Plaintiff is engaged in the business of selling merchandise on the installment plan and not in buying and selling stocks. In 1929 plaintiff adopted the policy of buying its stock when offered at less than market value for the purpose of retiring it. From time to time appellee bought 11,553 shares of its stock, cancelled and retired it. In 1930 and 1931 it bought 6,900 additional shares, not included in the 11,553 shares above mentioned, also with the intention of cancelling and retiring it. However, the depression coming on, plaintiff did not have enough cash available to complete the transaction and made an agreement with Hayden-Stone Company, brokers, under which they agreed to accept 50% of the purchase price and carry the stock for the balance. The stock was carried on plaintiff's books as treasury stock at a nominal value of $1 per share. Finally, demand was made by Hayden-Stone Company for payment and the plaintiff then sold it on March 15, 1937, at $10 per share, realizing a profit although the intrinsic value of the stock at that time was $11 to $12.50 per share.

The decree in each case depends upon the facts peculiar to it and the regulations do not affect a transaction not within its terms.

In their ordinary meanings "deals" and "dealings" imply a course of business or a settled policy. If plaintiff had adopted a policy of speculating in its own stock and traded in it for profit, no doubt the transactions would come under the terms of Regulation 94, Article 22. But that is not the case here presented. Plaintiff's line of business was the selling of merchandise. The stock was bought for the purpose of retiring it, which is conceded, not to sell at a profit. Plaintiff became the full owner when it purchased it, although Hayden-Stone Company held the stock subject to a lien for the balance of the purchase price. This was not a purchase on margin in the ordinary meaning of the term. The opinion of one witness that the stock was bought on margin, relied upon by the majority, is inconsistent with and rebutted by the other facts. Being unable to secure custody of the stock, plaintiff carried it as treasury stock, which it had the right to do. It may be presumed that if the stock had been purchased to be sold for profit the sale would have been completed promptly and plaintiff would have escaped the paying of interest on the balance for some six years. One purchase and sale of stock out of the usual course of business, would not be dealing in the stock for profit as would necessarily be the case if it were dealing in the stock of another corporation. First Nat. Bk. v. National Exchange Bk., 92 U.S. 122, 23 L.Ed. 679; Union County Nat. Bk. v. Ozan Lumber Co., 8 Cir., 179 F. 710; In re Hemming, D.C., 51 F.2d 850, 851; Cf. Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101.

Furthermore, plaintiff derived no profit from the transaction. The stock was sold for less than its intrinsic value. Stock of a corporation is a liability of the corporation and not an asset. When a corporation sells its own stock the purchaser acquires an equitable prorata ownership of the assets of the corporation, which are increased by the money paid. But the liability to the stockholder, which is also increased by the money paid, offsets the addition to the assets. National Home Owners Service Corporation v. Commissioner, 39 B. T. A. 753; Johnson v. Commissioner, 5 Cir., 56 F.2d 58; Cf. E. R.

Squibb & Sons v. Helvering, 2 Cir., 98 F. 2d 69.

I consider the transaction here involved does not come within the letter or intent of Regulation 94, Article 22 and they have no application.

For these reasons, I respectfully dissent.