**STERN BROS. & CO. v. UNITED STATES.**

No. 981.

District Court, W. D. Missouri, W. D.

July 6, 1942.

John H. McEvers and Reece A. Gardner (of Ryland, Stinson, Mag & Thomson) both of Kansas City, Mo., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Ruppert Bingham, Sp. Assts. to the Atty. Gen., and Maurice M. Milligan, U. S. Atty., and Richard H. Musser, Asst. U. S. Atty., both of Kansas City, Mo., for the United States.

REEVES, District Judge.

In this suit, and because of the nature of the transaction, the plaintiff challenges the right of the government to impose a tax upon the increase of its selling price over its purchasing price of a block of its own shares.

On November 9, 1934 plaintiff acquired 50 shares of its own stock at a price of $5,000 which it carried in its treasury until the 10th day of November 1936. It then sold such shares for $9,871.45. The increase was reported in its income tax return for that year but was deducted from the gross income. The Commissioner of Internal Revenue, however, required the plaintiff to include the increase in its return and to pay a tax thereon.

As a predicate for this suit the plaintiff has complied with all procedural requirements and now seeks the recovery of the amount so paid.

Plaintiff is a Delaware corporation. It was incorporated in the year 1917, under a charter which provided for the issuance of 3,000 shares of stock; 2,960 shares have been issued and are outstanding. When the company was organized it became the policy of the organizers and shareholders to keep the stock in the hands of its officers and employees. With a negligible exception this policy has been followed and maintained throughout the years of the company's activities. To effectuate this policy, it was the practice and custom, by common understanding of the shareholders, for the company to acquire the stock of deceased shareholders and otherwise under those emergent conditions where it seemed best for the company to reacquire portions of its outstanding stock. The stock thus acquired was not held in the treasury for sale to the public and neither was it retired. It was held in each instance for sale only to other officers or employees. This policy seemed advisable in the company's best interest and for its more harmonious conduct and operation. Being somewhat analogous to a copartnership, the management of the company sought to maintain the ownership of the shares in a group of persons related to the company either as officers or employees or both.

The particular block of stock in question was acquired in accordance with the policy, not only to accommodate the estate of deceased shareholders, but to acquire the stock for redistribution to its officers and employees. In accordance with such policy,

584

after holding the stock in the treasury for two years, it was sold to an active officer of the company for a sum of money slightly less than the actual book or intrinsic value of the stock. Because of the nature of the transaction, and for the reason that the shares were not handled as in the case of the shares of another corporation, the plaintiff' believed and now contends that the transaction was free from the burden of a tax even though there was an apparent gain from the sale.

The question for decision is whether a transaction of this kind is liable under the law for a tax.

1. Successive revenue acts with appropriate regulations promulgated for their interpretation and enforcement do not, as a rule, substantially vary in principle, but only in schedules. The revenue act in force at the time of this transaction, as both before and since, was general in its terms. Because of this, the Congress used the foresight to clothe the Commissioner of Internal Revenue, upon approval of the Secretary of the Treasury, with authority to promulgate regulations. Such regulations were both interpretative and procedural and subject to amendment without being retroactive.

Because of the universality and comprehensive nature of the statute it became, as anticipated by the Congress, incumbent upon the commissioner to announce regulations, among others, with respect to the incomes of corporations. It was obvious that, without such regulations, corporate enterprises would be embarrassed in the matter of their income tax returns. It became important to determine upon what income the tax should be properly imposed and what income would be properly free and exempt from the tax. The regulation promulgated prior to May 2nd, 1934 provided, among other things, that the proceeds from the original sale of corporate stock would not be subject to the tax, even though the amount received was in excess of the par value. In other words, if sold at a premium, such premium was not considered income. On the other hand, a company was not permitted to take a loss in cases where stock was sold at a discount. The commissioner was liberal toward corporations in need of working capital as where such capital was supplied through additional corporate issues. The regulation provided, moreover, that, " * * * if the corporation purchases any of its stock and holds it as

treasury stock, the sale of such stock will be considered a capital transaction and the proceeds of such sale will be treated as capital and will not constitute income of the corporation."

The commissioner then added a sentence which practically excluded from the operation of the law all corporate transactions involving the purchase and sale of its own stock. This was the language: "A 'corporation realizes no gain or loss from the purchase or sale of its own stock."

The latter sentence constituted the rule as applied by the courts in considering the subject of corporate transactions with its own stock. Even the Supreme Court accepted this interpretation as one reasonably springing from the language of the law.

In 1932 the Court of Appeals, First Circuit, in Commissioner of Internal Revenue v. S. A. Woods Mach. Co., 57 F.2d 635, declined to accept and follow the broad construction expressed by the commissioner in his regulations. In that case, in settlement of a claim, the corporate taxpayer had received a large block of its own stock. It was as if payment had been made in settlement of a claim which, of course, was income, and the taxpayer had used the money thus received to acquire and retire its stock. The court was of the opinion that the commissioner, in promulgating so broad and liberal a rule, did not have in mind the nature of such a transaction. Accordingly, the court said (loc. cit. 636 of 57 F.2d): "Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction involved. * * * If it was in fact a capital transaction, i. e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation, the Board rule applies. * * * But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income."

Following this decision, delivered April 7, 1932, the commissioner, on May 2, 1934, amended its regulation so as to conform with exactitude to the rule announced in the S. A. Woods Mach. Co. case, supra, and practically adopted the language of the de-

cision. He said, substantially, that the real nature of the transaction must be ascertained from the facts and circumstances to determine whether the gain or loss should be taken into account in computing taxable income. The rule provided that, " * * * if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another."

Further, the language of the new rule makes it obvious that the commissioner had in mind a state of facts precisely like those found in the decision of the First Circuit. This is justified for the reason that the commissioner illustrated in the rule a state of facts which would inevitably invoke the tax.

Since the commissioner undertook to define corporate transactions that would require the tax and set a standard, he permitted his former interpretation to stand with respect to other transactions involving corporate dealings with its own shares as in this case.

2. The transaction here under observation is in no way analogous to the facts mentioned by the commissioner and the numerous cases cited by the government where the tax was properly imposed. In this case the real nature of the transaction was frankly disclosed at the trial. The plaintiff was not dealing in its own stock. It never acquired its shares for sale in the usual sense of dealing. In maintaining an effective capital structure for the transaction of its appropriate business the company's shareholders deemed it important to distribute the shares only to officers and employees. The reason for this is obvious; as a wise business policy it was commendable; it was not only an incentive to devotion and effort, but, in a very practical way, it enabled the active officers and employees to share in the fruits of their own industry and efforts. The policy of the company has the elements of an agreement among the shareholders, as in the case of a copartnership, that is, that the shares shall be distributed only to agreeable and approved persons, namely, to officers and employees. This is advantageous, as stated, both to the corporation and to the shareholders. The stock involved in this controversy was acquired as an accommodation and to carry out the policies as above stated. It was held as treasury stock.

When transferred to one of its officers payment was made in accordance with the book, or intrinsic, value of the shares. While carried as treasury stock it had the same value as that attaching to outstanding shares. Having been transferred at its approximate book value, the other shareholders were neither benefited nor damaged. The corporate assets remained unchanged. It took out of its treasury shares of stock possessing a certain intrinsic value and cash was substituted therefor. There was no gain in fact to the corporation.

It will be seen from the foregoing that both the acquisition and the distribution of the stock were narrowly limited. The company did not in any sense deal "in its own shares as it might in the shares of another corporation." It was under restrictions as to acquisition and under equally great restrictions as to distribution. The shares of other corporations could be offered for sale to the public; the shares of this corporation could not. The company was at liberty to bid for shares of other corporations; it was not at liberty under its policy to do that in case of its own stock. The plaintiff was free to offer for sale to the public the shares of other corporations; it was not free to do so in case of its own shares.

3. The facts in all the cases cited and relied upon by the government are not analogous to the facts in this case. For instance, in the case of Allen v. National Mfg. & Stores Corporation, 5 Cir., 125 F.2d 239, the taxpayer bought 6,900 shares of its own stock on a "50% margin" basis from a broker. It sold said shares through its broker for a profit of nearly $25,000. It was dealing in its own stock precisely in the same way as it would deal in the shares of other corporations. But, even in that case, one of the judges thought the transaction exempt from the tax.

In the case of Investment Corporation of Philadelphia v. United States, D.C., 43 F. Supp. 64, the court said, as a predicate for the decision: "From all the circumstances I find as a fact that the transactions consisted of ordinary purchases of shares of stock, which were held for a time as assets of the corporation and then sold as such. Their real nature was the same as purchases and sales of the stock of any other corporation. They were not capital transactions, and the shares were not acquired or parted with in connection with any readjustment of the capital structure of the corporation. * * *"

No such finding can be made in this case.

Other cases have been examined, but, as stated, they differ materially and widely from the facts here.

In view of the above, the plaintiff is entitled to recover the amount paid by it and as prayed in its complaint. Counsel for plaintiff will submit a proper journal entry.