KISTLER v. BURNET, Commissioner of Internal Revenue.

No. 5371.

Court of Appeals of District of Columbia.

Argued March 9, 1932.

Decided April 4, 1932.

Ralph E. Tibbetts, of Boston, Mass., for appellant.

G. A. Youngquist, C. M. Charest, Sewall Key, and John MacC. Hudson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The question presented by this appeal is whether a taxpayer who owns certain shares of preferred stock in a corporation sustains a deductible loss, when, under the circumstances hereinafter set out, he surrenders a certain proportion of his stock to be canceled by the corporation, without receiving any direct consideration for the stock so surrendered and canceled.

The record discloses that the Kistler Lumber Company was a Delaware corporation having three classes of capital stock. The first consisted of 8,800 shares of first preferred stock, all outstanding, having a par value of $100 per share. The second class consisted of 41,020 shares of second preferred stock, all outstanding, having a par value of $100 per share, bearing cumulative dividends at the rate of 6 per cent. per annum, and entitled in case of liquidation to be paid $100 per share and accrued dividends, after the payment in full of the first preferred stock. The third class consisted of 10,000 shares of authorized common stock of a par value of $100 per share, of which, however, only 35 shares were actually issued and outstanding. Upon dissolution of the corporation the holders of the common stock were entitled to receive ratably all of the remaining assets of the corporation.

Appellant owned 23,500 shares of the second preferred stock which he had purchased in 1918, at the price of $100 per share. He also owned 5 of the outstanding 35 shares of common stock. The remaining 30 shares of common stock were owned by six other stockholders each holding 5 shares. The common stock constituted the entire voting shares of the corporation, and the seven owners thereof composed the board of directors.

On December 31, 1924, a statement of the assets and liabilities of the corporation disclosed a deficit of $825,225.03. In order to silence this deficit it was agreed that all owners of second preferred stock should surrender 25 per cent. of their shares to be canceled, whereby the deficit would be converted into a bookkeeping surplus of $200,274.97, without any actual addition to the assets of the corporation. At the same time it was agreed that 1,000 shares of no-par common stock should be issued and delivered to each of the seven directors (including appellant), without any payment to be made therefor, or any other addition to be made to the assets of the company because of such stock.

This plan, which required that the corporate charter be first amended, was then carried out. The charter was amended, 25 per cent. of the second preferred stock was surrendered and canceled, and 1,000 shares of no-par common stock were issued and delivered to each of the seven directors.

The market value of the second preferred stock before the transaction is not shown by the record. Appellant paid $100 per share for it in 1918, but in December, 1924, it had an asset value of about $80 per share.

There is no showing as to the market value of the stock after the transaction. Nor does the record show any sales of such stock.

■ Upon these facts appellant in his income-tax returns for 1924 claimed a deduction for 5,510 shares of stock thus surrendered by him and canceled, at the value of $100 per share. The deduction was disallowed by the Commissioner of Internal Revenue on the ground that the preferred stock thus surrendered for the purpose of reducing a deficit of the corporation enhanced the value of appellant's remaining stock and constituted a capital transaction, and that for income tax purposes the cost of the surrendered stock should be added to the cost of the remaining shares held by appellant, and any profit or loss resulting to appellant from the transaction should be determined upon the final disposition of the remaining shares. The Board of Tax Appeals sustained the determination of the Commissioner, and placed the decision upon the ground that the transaction worked a reorganization of the corporation within the meaning of section 203 of the Revenue Act of 1924, 43 Stat. 253 (26 USCA § 934), which recognizes neither profit nor loss in such a transaction.

In our opinion the Board was right in sustaining the determination of the Commissioner.

The Bureau of Internal Revenue has consistently held that the surrender by stockholders ratably of a portion of their stock to the corporation for the purpose of supporting its credit constitutes capital contributions which are to be considered as additional cost to the stockholders of the stock retained; and that in such cases gains or losses of the stockholder are to be ascertained upon the final disposition of such stock.

In Internal Revenue Bulletin, C. B. I–1, p. 194, this rule was applied under the Revenue Act of 1921, where stockholders of a corporation, in order to save its credit, surrendered all of their preferred stock to the corporation and it was divided among the creditors. The former stockholders retained 30 per cent. of the entire capital stock of the corporation, whereas formerly they owned 100 per cent. It was held that the surrender of the preferred stock represented for income tax purposes a contribution to the corporation, and that no loss or gain in the transaction could be determined until the remaining stock should be sold or otherwise disposed of, or becomes worthless in whole or part. To the same effect see idem, p. 195.

In Cum. Bull. II–2, p. 142, appears a ruling that: "Stockholders who, in proportion to their stock holdings, purchase paper of the corporation known by them to be worthless, may not deduct the amounts so paid as bad debts. Those amounts are held to be an additional price paid for the stock pursuant to a voluntary assessment."

Similarly in C. B. V–1, p. 168, the following ruling under the Revenue Act of 1917 is promulgated: "A stock holder surrendering to a corporation, pro rata with all other stock holders, 50 per cent. of its stock in the corporation in order to eliminate a deficit appearing on the books of the company realized no taxable gain and sustains no deductible loss from such transaction."

In Regulations 65, Revenue Act of 1924, art. 49 reads in part as follows: "If a share-holder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation." In article 543, Id., it is said: "If, for the purpose of enabling a corporation to secure working capital or for any other purpose, the shareholders donate or return to the corporation to be resold by it certain shares of stock of the company previously issued to them, or if the corporation purchases any of its stock and holds it as treasury stock, the sale of such stock will be considered a capital transaction and the proceeds of such sale will be treated as capital and will not constitute income of the corporation."

■ This long-continued departmental interpretation followed by consistent administrative practice is entitled to great weight. Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297; First Nat. Bank in Wichita v. Commissioner (C. C. A.) 46 F.(2d) 283; Brewster v. Gage, 280 U. S. 327, 50 C. Ct. 115, 74 L. Ed. 457.

The present case is similar in principle to cases wherein a stockholder, in order to benefit the financial condition of a corporation, without other consideration, either voluntarily or by assessment, pays additional cash into the corporation in proportion to his holdings. It has been uniformly held that such payments are capital contributions, that no deductible loss is thereby sustained by the stockholder, and that gain or loss therefrom is to be determined and ac-

counted for when the stockholder's shares are finally sold or otherwise disposed of. First Nat. Bank in Wichita v. Commissioner (C. C. A.) 46 F.(2d) 283; Burns v. Commissioner (C. C. A.) 31 F.(2d) 399; Mastin v. Commissioner (C. C. A.) 28 F.(2d) 748, 753.

Moreover, as held by the Board, the Revenue Act of 1924, § 203 (b) (2), supra, expressly provides that no gain or loss shall be recognized upon the exchange, pursuant to a plan of reorganization, of stock in a corporation solely for stock in the same corporation. The provision reads as follows: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." Subsection (h) (1) of the same section reads in part as follows: "As used in this section * * * the term 'reorganization' means * * * (C) a recapitalization. * * *"

It is plain that the changes made in this instance in the capital stock of the corporation were carried out according to a single comprehensive plan. The Board therefore rightly found that they resulted in a recapitalization and reorganization of the corporation within the purview of the foregoing provisions. It is argued that such could not have been appellant's intention, inasmuch as such a result would diminish the value of his holdings of preferred stock as compared with the common stock in case of the liquidation of the corporation. This argument, however, ignores the fact that at the time of the reorganization the assets of the company showed a deficit of $825,225.03, and that in case of liquidation at that time this entire deficit would have fallen upon the second preferred stock. It also ignores the fact that one result of the reorganization was to apply more than $200,000 of book assets to the benefit of the common stock, in which appellant had a one-seventh interest, also that the common stock was increased, and that 1,000 shares of the increased stock were given to appellant without other consideration.

Accordingly, for income tax purposes, no deductible loss is recognized because of the surrender of part of appellant's stock, nor is any gain recognized because of the 1,000 shares of additional common stock issued to appellant as part of the transaction. Such gains or losses, however, are not to be overlooked, but are to be considered when appellant's retained shares shall be sold or otherwise disposed of, or become worthless in whole or in part.

The decision of the Board of Tax Appeals is therefore affirmed.