## AVIATION CAPITAL, Inc., v. PEDRICK.

### No. 185.

Circuit Court of Appeals, Second Circuit.

March 13, 1945.

Webster & Garside, of New York City (Francis H. Horan, Frederick Sheffield, and Henry Cassorte Smith, all of New York City, of counsel), for plaintiff-appellant.

John F. X. McGohey, U. S. Atty., of New York City (Samuel Rudykoff, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before CHASE, HUTCHESON, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff has appealed from a judgment for the defendant entered in the District Court for the Southern District of New York in a suit it brought against the Collector of Internal Revenue for the Second District of New York to recover income taxes it had paid the collector for the calendar years 1937, 1938 and 1939 and which it claimed had been illegally assessed and collected. The suit was tried without a jury and the court found, on amply supporting evidence, facts which are summarized as follows:

The plaintiff, a Delaware corporation licensed to do business in New York, was

---

engaged in the business of purchasing, holding, selling and dealing in the securities of aviation companies. It was dissolved in 1942, but under Delaware law it continued to exist for the purposes of litigation and of winding up its affairs. Its charter required it to purchase its own stock upon demand of holders thereof at a price calculated according to a stated formula by reference to the current net worth of the corporation's assets. The charter provided that such stock when purchased "shall not be thereby cancelled or retired, but may be reissued; provided, however, that the corporation may reduce its stock in the manner authorized by law and effect such reduction by the cancellation and retirement of any shares of its stock held by it."

Between 1929 and 1939 the plaintiff made purchases totaling 7162 shares of its own stock at prices which aggregated $127,052.95, and in the years 1930, 1937, 1938 and 1939 it sold 7097 shares at prices totaling $249,854.75. Its purpose in selling the stock was to obtain additional needed working capital.

In 1937 the corporation had an authorized stock of 10,227 shares of which 5230 shares were outstanding and 4997 shares were held as treasury stock. In 1938, with the same authorization, 5485 shares were outstanding and 4742 shares were in the treasury. In 1939, of 12,795 shares authorized, 12,730 shares were outstanding and 65 shares were held in the treasury.

Upon issuing its stock the plaintiff regularly allocated the sales price in excess of par value to paid-in surplus, and upon buying it back the corporation charged paid-in surplus with the purchase price in excess of par value.

The corporation's purchases of its own stock were made only upon demand by its stockholders and were made at the values fixed according to the formula prescribed in the charter, and sales were made at current liquidation values. At such times the corporation had available some authorized but unsold stock which it could have sold instead.

When the plaintiff dealt in the stocks of other corporations it entered these transactions upon its books in a way different from the method it followed when dealing in its own stock. A purchase of other stock was entered on its books merely as a change in the form of its assets, from dollars to investments. When shares of its own stock were purchased, entries on its books indicated a reduction of the corporation's net worth because the stock so purchased was not carried as an asset or as having any value, although it was not cancelled or retired. The corporation paid itself no dividends on its treasury stock. When it sold its own stock so repurchased the excess of the proceeds over par value was added to its surplus account and thus increased the corporation's net worth as stated. In the sale of other stocks, however, the profit or loss went into income account. Sale of treasury stock had the same effect on the corporation's books as did the original sale of stock.

The plaintiff filed income and excess profits tax returns for 1937, 1938 and 1939. The Commissioner of Internal Revenue determined tax deficiencies of $11,415.36, $10,916.67 and $23,959.36 respectively for the three years, the additional assessments being based upon the excess of the sale prices over the purchase prices of the shares of its own stock bought and sold by the plaintiff. In each instance the corporation unsuccessfully protested and on October 9, 1942, it paid the additional taxes with interest. On December 3 it filed claims for refund of the amounts so paid, but the Commissioner had taken no action thereon, and more than six months elapsed, before this suit was brought.

On June 17, 1940, the plaintiff declared a 100% stock dividend payable the next day. The resolution of its board of directors provided in part that "stock of record shall be deemed to include any share of stock which a purchaser shall have become obligated to purchase from the Company prior to the record date and hour, but for which no certificate shall have been issued at that time, and further that on any share which at the record date and hour the Company shall have become obligated to repurchase, such dividend shall be payable to the Company as in the case of Treasury stock. * * * Par value of $1.00 per share for the shares issued for such stock dividend (less the par value of shares payable on Treasury stock) be charged to paid-in surplus."

Pursuant to this resolution the plaintiff allocated four hundred shares of its stock to treasury stock.

The profit which the plaintiff made in buying and selling its own stock as it did falls within gross income as defined in § 22(a) of the Revenue Act of 1936 and the

identical § 22(a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 22(a) as those sections are interpreted by likewise identical Regulations 94, Art. 22(a)-16, and Regulations 101, Art. 22(a)-16, unless the fact that the plaintiff was required by its certificate of incorporation to purchase its own stock made the statute and regulations inapplicable, or unless the purchases and sales were capital transactions. The regulations read as follows:

"Acquisition or disposition by a corporation of its own capital stock.—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the above shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Act."

█ The validity of the regulations is here questioned, but we have previously held them valid and we adhere to that decision. Commissioner of Internal Revenue v. Air Reduction Co., 2 Cir., 130 F.2d 145, certiorari denied 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546. The following cases are in accord: Allen v. National Manufacture & Stores Corp., 5 Cir., 125 F.2d 239, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753, and Helvering v. Edison Bros. Stores, Inc., 8 Cir., 133 F.2d 575, certiorari denied 319 U.S. 752, 63 S.Ct. 1166, 87 L.Ed. 1706.

In Dow Chemical Co. v. Kavanagh, 6 Cir., 139 F.2d 42, a corporation had purchased its own shares on the open market at a time when it had available surplus funds for that purpose, had entered them on its books among its assets, and sold them later for more than it had paid for them, to raise then needed additional capital. It was held, nevertheless, that the transaction was not a capital one which should be treated for tax purposes on the same basis as the sale of an original stock issue. The corporation could have retired the purchased stock and issued new stock to sell when it desired to raise additional capital, but the equivalency from an accounting standpoint of what it might have done with what it did do was held not decisive for tax purposes. The character of the transaction tax-wise was instead held to be established by what had been done, and because that brought it within the applicable regulation the tax was upheld. The same reasoning applies here a fortiori, for the plaintiff's certificate of incorporation provided not only for its purchase of its own stock but that the stock so purchased should not be cancelled or retired except in a reduction of its stock in the manner authorized by law, in which event it could bring about the reduction by the cancellation and retirement of any shares it held.

█ Thus it is made clear that the purchase and resale of its own stock was one of the contemplated activities in which the corporation would engage, and the manner and result of the performance of its obligations under its certificate of incorporation are what control, rather than the nature of the obligation itself. The applicable regulations, it will be noticed, provide for the computation of gain or loss in the same manner as though the corporation were dealing in the shares of another "if a corporation deals in its own shares as it might in the shares of another corporation." The result, provided this condition be fulfilled, must be treated in the same way for tax purposes whether the reason for the purchase of the shares is to carry out an existing obligation or is to take advantage of what seems to be a desirable business opportunity. In each instance tax consequences flow from what is accomplished by what is done instead of from the motive with which it is done. United States v. Phellis, 257 U.S. 156, 172, 42 S. Ct. 63, 66 L.Ed. 180.

█ Nor is the result changed by the fact that the corporation saw fit, after it had purchased its own shares, to carry them on its books differently than it did the

shares of other corporations which it purchased. The words "deals in its own shares" as used in the regulations relate to the acquisition and disposal of the shares at the beginning and the end of the holding period and not to the manner of making bookkeeping entries concerning them during the holding period.

Affirmed.

FRANK, Circuit Judge (concurring).

Because of the earlier decision of this court on the point in question, Commissioner of Internal Revenue v. Air Reduction Co., 2 Cir., 130 F.2d 145, I feel bound to concur in the majority decision here. For the reasons expressed by Judge Learned Hand in his opinion in E. R. Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69, and his dissenting opinion in Commissioner v. Air Reduction Co., supra, I feel, however, that the prevailing rule is a singular triumph of form over substance.