COMMISSIONER OF INTERNAL REVENUE v. BATTEN, BARTON, DURSTINE & OSBORN, Inc.

No. 59, Docket 21037.

United States Court of Appeals Second Circuit.

Dec. 23, 1948.

Theron Lamar Caudle, Asst. Atty. Gen., and George A. Stinson, Ellis N. Slack, Lee A. Jackson and Harry Marselli, Special Assts. to the Atty. Gen., for petitioner.

Eugene T. McQuade, of New York City (Tompkins, Boal & Tompkins, of New York City, of counsel), for respondent.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This petition by the Commissioner of Internal Revenue to review a decision of the Tax Court brings up the taxability of gains the respondent made in 1939 and 1941 in selling its own capital stock to its employees. Although the deficiencies expunged by the Tax Court were determined by the Commissioner in the respondent's income taxes for both years, in its declared value excess profits taxes for 1939, and in its excess profits taxes for 1941; the difference in the nature of the taxes is immaterial and decision as to each deficiency turns upon the correct solution of the same problem. This may be stated to be whether what the parties have stipulated as the amount of gains made by the respondent in each year in selling its stock to its employees is includable in its gross income by virtue of § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), and T.R. 103, § 19.22(a)-16.

The pertinent facts are not in dispute and are that the respondent is a New York corporation which was organized in 1928 to engage in business as an advertising agency and has done so. It was authorized to issue 50,000 shares of capital stock all of one class having no par value. It sold and issued all of these shares to some of those who were to be its officers and employees and as a part of that transaction each of the purchasers immediately donated to the respondent one-fifth of the shares bought to be held in the treasury for sale to other employees who should demonstrate their worth. The object was to bind these employees more firmly to the corporation by such loyalty and attachment to

the business as a stock interest would engender. This was thought to be important because the corporation's employees in large part consisted of writers, artists, radio directors and the like upon whose individual talents the success of the business was to a great extent dependent.

In carrying out this business purpose, shares of the respondent's capital stock were at times sold to employees recommended to be deserving by department heads and approved as such by the executive committee. In 1939 the respondent was in need of additional working capital and desired to sell its treasury shares to employees for the purpose of obtaining it as well as to continue to make sales to carry out its policy of recognizing employee worth. It then set up its so-called stock plan of 1939 under which employees could purchase treasury stock allotted to them by giving the corporation notes for the purchase price and leaving the stock with the corporation as security. The notes were payable out of dividends declared on the stock which were first applied to the payment of interest and then to principal and by the application to their payment of not less than twenty cents for each share purchased to be deducted from each purchaser's semi-monthly pay check. Whenever a share of stock was thus paid for in full it was delivered to the purchaser, if request for that was made, and each purchaser might, except in the event of termination of his employment for any reason other than death, within seven years rescind his purchase of all shares not already paid for. If the purchaser's employment by the corporation was ended for any reason except death the corporation had the right the repurchase the shares paid for.

The corporation also had the right of first purchase of any shares bought and paid for by employees whose employment was terminated by discharge, resignation or death. It was bound to buy the shares of any deceased or discharged stockholder within ninety days after they were offered to it and had the option to buy those of a resigned employee within a like period. A stockholder could not sell his shares without first offering them to the corporation and then could sell to no one else unless the corporation either consented to the sale or failed to buy the shares within ninety days after the offer to it.

All sales by the corporation were made at the then book value of the shares and purchases, excluding the cancellation of notes for shares which the purchaser had elected not to take as above stated, were made at their current book value. There was never any negotiation as to price nor any effort made to make purchases or sales at times which would be more favorable to the corporation.

All of the outstanding stock of the corporation is held by its employees. There were seventy-eight such stockholders in 1939 and one hundred and ten in 1941. The stock was not listed on any exchange or dealt in except as above noted. The stock held by the corporation in its treasury was not carried on its books or into its balance sheet as an asset and no dividends were declared upon it. During the years 1928 to 1941 inclusive, the corporation bought 45,-957 shares of its stock which, with the 10,-000 donated to it, provided it with 55,957 shares which from time to time became treasury stock . During the same period it . sold 35,383 shares which included all of those donated. In 1939 it sold at an average price of $55.93 per share, 11,591 shares of treasury stock of which 5,583 had been donated and 6,008 purchased. In 1941 it sold at an average price of $66.74 per share, 7,877 shares of treasury stock all of which had been purchased. The Commissioner determined the deficiencies for 1939 by including in the respondent's gross income for that year $88,925.99 as the gain upon its sales of stock and the deficiencies for 1941 by including $4,769.15 in its gross income as the gain upon the sales it made in that year. As before stated, the parties are in agreement as to the amount of such gains, and dispute only the taxability of them.

As the decisions have already made too clear for further debate, Congress intended in § 22(a) of the Internal Revenue Code to include in gross income everything 'which in fact is "income derived from any source whatever." Sec. 19.22(a)-16 of T.R. 103, which has been held valid, Commissioner

v. Air Reduction Co., Inc., 2 Cir., 130 F.2d 145, certiorari denied, 317 U.S. 681, 63 S. Ct. 201, 87 L.Ed. 546; Dow Chemical Co. v. Kavanagh, 6 Cir., 139 F.2d 42, deals specifically with the acquisition or disposition by a corporation of shares of its own capital stock. It provides, after the general observation that the real nature of the transaction is what counts and after expressly excluding the receipt of the subscription price of shares upon their original issuance as a transaction which can result in recognizable gain or loss, that "if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another."

Since the respondent bought part of the shares it sold and was given the remainder we must decide whether (1) the respondent's gains from the sales of the shares it had acquired by purchase are gross income within the above statute and regulations and, if so, (2) whether its gains from sales of donated shares are also.

As to the gains from the sale of purchased shares Commissioner v. Air Reduction Co., supra, and especially Aviation Capital, Inc., v. Pedrick, 2 Cir., 148 F.2d 165, 160 A.L.R. 1080, certiorari denied, 326 U.S. 723, 66 S.Ct. 28, 90 L.Ed. 428, show that the transactions were of the character that brings them within the above statute and regulations. And see, Helvering v. Edison Bros. Stores, Inc., 8 Cir., 133 F. 2d 575, certiorari denied, 319 U.S. 752, 63 S.Ct. 1166, 87 L. Ed. 1706; Dow Chemical Co. v. Kavanagh, supra; Allen v. National Manufacture & Stores Corp., 5 Cir., 125 F.2d 239, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753. As the opinion in Aviation Capital v. Pedrick, supra, points out, the absence of a profit motive and the presence of contract restrictions and obligations did not put the resulting gain from actual purchases and sales beyond the reach of the statute as interpreted by the regulations.

The gains from the sales of the donated shares do not fall so clearly within the scope of the above decisions that they can be put into the category of gross income quite so readily. It seems clear that when stockholders donate their stock in a corporation to the corporation they make what is to be treated for tax purposes as a capital contribution. They do when they give cash. Jenkins v. Bitgood, 2 Cir., 101 F.2d 17, certiorari denied, 307 U.S. 636, 59 S.Ct. 1033, 83 L.Ed. 1518; Park v. Commissioner, 2 Cir., 58 F.2d 965, certiorari denied, 287 U.S. 645, 53 S.Ct. 91, 77 L.Ed. 558. And if the stock surrendered had been cancelled it would certainly have been a capital transaction. Kistler v. Burnet, 61 App.D.C. 135, 58 F. 2d 687. Nevertheless, the shares when they were held in the treasury after being donated could be resold without any of the restrictions imposed by law which might have hampered the sale of authorized but unissued shares. Borg v. International Silver Co., 2 Cir., 11 F.2d 147. Perhaps this is why they were actually issued and given back simultaneously. But whatever the reason, the effect was to make them available for use by the corporation in carrying out its intended policy to bind deserving employees to it by inducing them to become stockholders. Except as to basis in computing gain or loss when the corporation sold any of those shares, a matter which the stipulation of the parties makes irrelevant now, they were, when received by the corporation and while it held them in its treasury, subject to sale upon exactly the same terms and to exactly the same effect as though they had been purchased. It could sell them and buy them back and sell them again just as it could shares it acquired in the first instance by purchase. It seems perfectly clear that, though its first acquisition of them after they were issued was itself a capital adjustment which was to be ignored taxwise as to that particular transfer, they did not thereby take on any permanent status as shares of a special nature in which the corporation could not thereafter deal with consequences taxwise the same as though it had acquired them by purchase. What is decisive is not how the stock was first made available for the corporation to deal in as it might in the shares of another but the character and result of what was done with it after its acquisition. After it had

once been issued and the corporation got it 'back and sold it without changing its capital structure, as the Tax Court found it did, it did deal in it just as it dealt in shares it purchased, and we can find no distinction insofar as includability in gross income is concerned between the gains from the subsequent sales of donated stock and those of purchased stock. Apart from the amount of those gains, it was a matter of indifference to the corporation whether it held in its treasury shares given to it or those purchased by it and whether it sold the one or the other.

Very likely this decision of the Tax Court was always reviewable as one involving only the interpretation as a matter of law of a statute and the regulations promulgated thereunder but any possible doubt of its reviewability was removed by Sec. 36 of Public Law 773, 80th Cong. 2d Sess., June 25, 1948, amending § 26 U.S. C.A. § 1141(a).

Reversed and remanded for reinstatement of the deficiencies.

FRANK, C. J., concurring in separate opinion.

SWAN, C. J., dissenting in separate opinion.

FRANK, Circuit Judge (concurring).

As I said in concurring in Aviation Capital v. Pedrick, 148 F.2d 165, 168 (C.C.A. 2), I think it irrational ever to consider "treasury stock" as a capital asset in these tax cases. See L. Hand, J., in E. R. Squibb & Sons v. Helvering, 98 F.2d, 69 (C.C.A. 2) and his dissenting opinion in Commissioner v. Air Reduction Co., 130 F.2d, 146 (C.C.A. 2). But that doctrine is now accepted in this circuit. The situation, then, to my mind, is like that in a farce: An untenable premise, once adopted, is to be carried out logically. . On that basis, a gift to a corporation of stock which becomes one of its capital assets is the same as a gift to it of any other property, so that a profit on its sale by the corporation is a taxable gain.

SWAN, Circuit Judge (dissenting).

There are numerous unusual circumstances in the present case which differen-

tiate it, in my opinion, from decisions which have held taxable gain from the purchase and sale of "treasury stock." For the reasons stated by the Tax Court, 9 T.C. 448, I think that the taxpayer did not deal in its own shares "as it might in the shares of another corporation"; consequently I would affirm the decision.