## COMMISSIONER OF INTERNAL REVENUE v. ROLLINS BURDICK HUNTER CO.

### No. 9614.

United States Court of Appeals
Seventh Circuit.

May 19, 1949.

Theron L. Caudle, Assistant Attorney General, Ellis N. Slack, Harry Marselli, Special Assistant to the Attorney General, for petitioner.

Raymond H. Schultz, Victor J. Voorheis, David C. Kenyon, Chicago, Illinois, for respondent.

Before MAJOR, Chief Judge, MINTON, Circuit Judge, and LINDLEY, District Judge.

LINDLEY, District Judge.

The Commissioner of Internal Revenue seeks to reverse a decision of the Tax Court that he improperly levied deficiencies in the respondent taxpayer's income taxes for 1942 and 1943, because of the latter's failure to include as income the gain upon sales of its treasury stock to its employees over and above the cost of such shares when purchased from a former stockholder. The essential stipulated facts are as follows: Respondent is engaged in insurance brokerage. Its prosperity is dependent primarily upon the personal efforts and abilities of the persons carrying on the business. Its capital stock, 1,000 shares, has always been allocated to and owned by those individuals according to their respective abilities to produce profitable business. Each has been a director of the corporation. When a stockholder died or retired respondent bought his shares at a price previously fixed by contract, put them in its treasury and, thereafter, when it determined so to do, sold them to other contributing employees at their book value. The deficiencies assessed by the Commissioner represent the profit upon sales of

such shares sold to various employees in late 1942 and early 1943, i. e., the excess of sales price over cost.

The statute involved, section 22(a) covering gross income, is as follows: " 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." 26 U.S.C.A. § 22.

The pertinent regulation, Section 29.22 (a)—15 of Regulation 111 follows: "Acquisition or Disposition by a Corporation of Its Own Capital Stock.—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code."

Though the statute defining taxable income has remained the same over the years, the Commissioner of Internal Revenue has, in succession, promulgated three variant regulations covering gains from a corporation's purchase and sale of its own shares. The first, under the Act of 1916, 39 Stat. 757, made such gains taxable. The second, under the Act of 1918, 40 Stat. 1069, declared them not taxable, and the third, quoted above, adopted in 1934 and still in force, provides that they shall be taxable if the "corporation deals in its own shares as it might in the shares of another corporation."

The contentions of respondent can best be stated by quoting from the opinion of the Tax Court, wherein it said: "The stipulated facts amply demonstrate that *the petitioner was not dealing in its own shares as it might in the shares of another corporation.* * * * *The petitioner had no profit motive* in buying or selling, but was merely arranging that its shares should be held, * * *, by those who were its officers and principally responsible, through their personal services for its success * * *. *Those purposes could not be accomplished by dealing in any other stock.* The petitioner did not buy stock and sell it to create employee interest. It bought, * * * so that the stock would never get into outside hands, but would be used only to indicate ownership in the business by those principally responsible for its success. *The purchases and sales readjusted the capital for this purpose only.* The transaction, viewed as a whole, was not one giving rise to taxable gain under Section 22(a) and the regulations." (Emphasis ours.) In support of this decision, respondent now urges that if there was no profit motive and if the purpose for which the Treasury Stock was purchased and sold could not have been accomplished by dealing in the stock of another corporation, then the gain is not taxable. We think this is an erroneous interpretation of the regulation.

When the Commissioner amended the Regulation in 1934, he followed closely the language of the opinion in Commissioner v. Woods Mach. Co., 1 Cir., 57 F.

2d 635, 636, certiorari denied. 287 U.S. 613, 53 S.Ct. 15, 77 L.Ed. 532. There, in an accounting for loss of profits resulting from patent infringement, it was determined that the infringing company owed the taxpayer a certain sum of money. This obligation was paid by delivering to the taxpayer shares of its own stock, which it then retired. The transaction occurred at a time when the regulation provided that the gain from the purchase and sale by a corporation of its own stock did not constitute taxable income but said nothing about whether the value of stock received in payment of an obligation constituted taxable income. The court held that the value of the stock constituted taxable income, and in so doing, said: "Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction. * * * If it was in fact a capital transaction, i. e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation," the transaction is not taxable. "But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss," the gain or loss should be taken into account in computing the taxable income.

■ Considering the circumstances under which the quoted language was employed, it is clear that the court did not use the word "as" to describe the method of dealing, but merely employed the words "as it might do" as illustrative. The opinion reflects no intent to fix and define the exact limits within which the dealing must fall. Nor do we attribute to the Commissioner's language in the regulation such an intent.

Under the applicable regulation taxing of gain to a corporation from the sale of its treasury stock has been sustained in numerous cases, under a variety of circumstances. In Commissioner v. Batten, Barton, Durstine & Osborn, Inc., 2 Cir., 171 F.2d 474, 475, the corporation had the contractual right to buy shares held by employees whose employment was terminated by discharge, resignation or death, and the employees could not sell their stock without first offering it to the corporation. Stock donated or sold by employees to the corporation was placed in the treasury and later sold to other employees at book value, resulting in a gain to the corporation. The court said: "As the decisions have already made too clear for further debate, Congress intended in § 22(a) of the Internal Revenue Code to include in gross income everything which in fact is 'income derived from any source whatever.' * * * As to the gains from the sale of purchased shares, Commissioner v. Air Reduction Co., supra [2 Cir., 130 F.2d 145], and especially Aviation Capital, Inc., v. Pedrick, 2 Cir., 148 F.2d 165, 160 A.L.R. 1080, certiorari denied 326 U.S. 723, 66 S. Ct. 28, 90 L. Ed. 428, show that the transactions were of the character that brings them within the above statute and regulations. And see, Helvering v. Edison Bros. Stores, Inc., 8 Cir., 133 F.2d 575, certiorari denied 319 U.S. 752, 63 S.Ct. 1166, 87 L. Ed. 1706; Dow Chemical Co. v. Kavanaugh, supra [6 Cir., 139 F.2d 42]; Allen v. National Manufacture & Stores Corp., 5 Cir., 125 F.2d 239, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753." As to the shares donated to the corporation by employees, the court proceeded: "But whatever the reason, the effect was to make them available for use by the corporation in carrying out its intended policy to bind deserving employees to it by inducing them to become stockholders. * * * What is decisive is not how the stock was first made available for the corporation to deal in as it might in the shares of another but the character and result of what was done with it after its acquisition. After it had once been issued and the corporation got it back and sold it without changing its capital structure, as the Tax Court found it did, it did deal in it just as it dealt in shares it purchased."

In its earlier decision in Commissioner v. Air Reduction Co., 2 Cir., 130 F.2d 145, 148, the same court dealt with a similar question where the taxpayer corporation,

pursuant to options, had repurchased certain of its shares and had resold them to officers or employees at a price in excess of their cost, saying: "The respondent contends that the regulation applies only to such active trading in the company's own stock as would normally be done for speculative purposes. But this, we think, is too narrow an interpretation. The regulation contemplates rather such dealing in one's own stock as exists whenever that treasury stock is employed as an ordinary asset as the stock of another corporation would be. Thus capital readjustments would be outside the scope of the regulation, but not a transaction where the treasury stock is dealt with as a normal asset of the corporation. This broad interpretation of the regulation is indicated in G.C.M. 16651, XV-2 Cum.Bull. 130 (1936), where the General Counsel rules that it would apply where a corporation purchased its stock in the open market and then sold it to employees pursuant to an employees' stock purchase plan. Also the courts have adopted the more general interpretation of the regulation. Allen v. National Manufacture & Stores Corp., 5 Cir., 125 F.2d 239, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753. There the purchase of the company's own stock on margin was made with the intention of retiring it, which was never done, however. Later the resale was made to a syndicate in order to satisfy the margin requirements. This was unlike the usual course of speculative trading, and indeed the intent was to effect a capital readjustment. Yet the court viewed it as a transaction yielding a taxable gain * * *.

"Likewise here the two sets of transactions made use of the treasury stock just as though it were an ordinary asset. Part was used to pay for the Pure Carbonic Company's stock and part was sold for cash to officers pursuant to an option agreement. Neither of these dealings involved a capital readjustment, and the gain from each is taxable income."

Similar in result are Helvering v. Edison Bros. Stores, 8 Cir., 133 F.2d 575, certiorari denied 319 U.S. 572, 63 S.Ct. 1166, 87 L.Ed. 1706, 160 A.L.R. 1080;

Commissioner v. Boca Ceega, etc. Co., 3 Cir., 66 F.2d 1004 and Aviation Capital v. Pedrick, 2 Cir., 148 F.2d 165, 167. In the latter case the court said that the result "must be treated in the same way for tax purposes whether the reason for the purchase of the shares is to carry out an existing obligation or is to take advantage of what seems to be a desirable business opportunity. In each instance tax consequences flow from what is accomplished by what is done instead of from the motive with which it is done. United States v. Phellis, 257 U.S. 156, 172, 42 S.Ct. 63, 66 L.Ed. 180."

We think this case belongs in the same category. Respondent held shares of its own stock in its treasury which it had purchased pursuant to contract from one of its employees at $50 per share in 1936. In 1942 and 1943, it sold 95 of these shares to other employees at their book value of $300 per share. The sales price of the shares sold in 1942 exceeded the cost of the same by $13,250 and of those sold in 1943 by $10,500. Respondent urges that this gain did not represent taxable income, but, on the contrary, that the transaction, when taken as a whole, amounted to nothing more than an adjustment of capital. We disagree. The capital structure of the taxpayer never changed. It was authorized to issue 1,000 shares, which it did issue and never canceled. The fact that at various times it purchased and resold some of its own shares merely resulted in a change of identity of its shareholders. Such transactions can hardly be considered a readjustment of capital structure. We are in agreement with the cases previously discussed, wherein the various circuits have held the gains from similar transactions to be taxable income. We think that a profit upon the sale by a corporation of its treasury stock under the circumstances of this case, is within the statutory definition, "gains or profits and income derived from any source whatever." The respondent "has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken." United States v. Kirby Lumber Co., 284 U.S. 1 at page 3, 52 S.Ct. 4, 76 L.Ed. 131.

Respondent, in contending that the corporation did not deal in its own shares as it might in the shares of another corporation emphasizes the fact that there was no profit motive on the part of respondent; that rather its motive was to keep its stock in the hands of its officers and employees. But similar were the situations before the court in the cases cited from the Second Circuit. The circumstances here were no more unusual than those in those cases. In Commissioner v. Batten, etc., supra, the court remarked: "As the opinion in Aviation Capital v. Pedrick, supra, points out, the absence of a profit motive and the presence of contract restrictions and obligations did not put the resulting gain from actual purchases and sales beyond the reach of the statute as interpreted by the regulations." And we have seen from the quotation from Commissioner v. Air Reduction Co., supra, that a contractual obligation to sell to employees does not remove the resulting gain from taxation.

■ One further point should be mentioned. Respondent contends that we are without authority to review the decision of the Tax Court for the reason that such review involves only a question of fact, decision upon which was based upon undisputed, stipulated facts. We were confronted by a similar question in Three States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61, and there made a somewhat analytical study of the pertinent decisions of the Supreme Court including Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, and Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 1235, 89 L.Ed. 1670, 163 A. L.R. 1175, and concluded that the question of whether, upon undisputed facts, income in question was realized from the sale of land held primarily for sale in the ordinary course of its business, was one of law for the court,—that is whether the applicable statutes were such as to preclude the decision of the Tax Court. So here we think the question of whether the respondent dealt in its own shares, as it might in those of another corporation, is, upon the stipulated facts a question of application of those specific facts to the applicable statute and regulations, a question of law, in the decision of which we should, of course, give great weight to the decision of the Tax Court, but which we must decide to our own satisfaction. This conclusion we think accords with the Supreme Court's decision in the Dobson case. Closely analogous is the Bingham case, where the court held that the question of whether "on the facts found, the expenses in question are nondeductible, either because they were not to produce income or because they were related to the management of property which was not held for the production of income" turned upon the meaning of the pertinent statute and was, therefore, a pure question of law.

Having concluded that only a question of law is presented, we do not reach the question of whether Sec. 36 of Public Law, 773, 80th Cong. 2d Sess., June 25, 1948, 26 U.S.C.A. § 1141(a), which, it is said, purports to abolish the rule of the Dobson case, applies to appeals pending at the time of its passage.

The decision of the Tax Court is reversed.

MAJOR, Chief Judge (dissenting).

The Tax Court in its opinion stated: "The stipulated facts amply demonstrate that the petitioner was not dealing in its own shares as it might in the shares of another corporation." In my view, this is a finding of fact amply supported and should be accepted by this court. But whether it be treated as such or as a conclusion of law is really immaterial because the undisputed facts clearly demonstrate, so I think, that the taxpayer did not deal "in its own shares as it might in the shares of another corporation." I would affirm the judgment of the Tax Court.