COMMISSIONER OF INTERNAL REVE-
·NUE v. H. W. PORTER & CO.,
Inc. et al.

No. 10301.

United States Court of Appeals
Third Circuit.

Argued March 5, 1951.

Decided March 29, 1951.

Harry Marselli, Washington, D. C., (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

George E. H. Goodner, Washington, D. C., for respondent.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

Is a corporation subject to income tax on what it has made from a transaction which had its own shares as the subject matter? This appeal calls for an answer to that

question. The Commissioner said the corporation realized a taxable gain, the taxpayer said not. The Tax Court agreed with taxpayer, reiterating a position it had earlier taken upon the matter. 1950, 14 T.C. 307.

The facts of the case are not in dispute. Taxpayer was incorporated under New Jersey law in 1927. Its organizers were persons who had managed the sale and installation of insulating equipment portion of the business of a former employer. This employer discontinued this portion of its business and gave the taxpayer corporation the exclusive right to handle it in a certain territory. The corporation has an authorized capital stock of 200·class A and 2800 class B common no par stock. The only difference between the two is that class B carries no voting rights. The charter provides that class A stock may be issued only to persons then holding stock and class B stock may be issued to outsiders only with the consent of a majority of class A stockholders. It permits the inter vivos or testamentary transfer of either class to outsiders only after first the corporation and then other stockholders have refused to purchase it at book value. Stock so purchased by the corporation may either be sold pro rata to existing shareholders or held by the company. The Tax Court found that the purpose of these transfer restrictions is to keep control of the corporation within the organizing group of associates.

Initially all of the class A and 1500 of the class B shares were issued to taxpayer's organizers at $50 a share. By 1938 all the remaining class B shares had been issued at from $50 to $60 a share to these organizers or to employees.[1] On numerous occasions from 1931 to 1943 the corporation acquired its shares from stockholders or their estates and sold them to other stockholders or to employees. It never bought or sold its own stock except in transactions with its stockholders or employees.

The tax year with which we are dealing is 1943. In February of that year, shortly after the death of a major stockholder, the corporation purchased his 556 shares at $100 a share, a price previously agreed upon,[2] after "some discussion and disagreement" among the directors. In July 1943, 236 of these shares were sold to other shareholders for $11,800 more than the amount paid by the corporation to acquire them.[3] The Commissioner sought to tax this increase as a short term capital gain. The Tax Court held that this was error.

In view of the discussion the question at issue has received elsewhere before being raised in this Circuit, our review of it may be short. There is no provision in the Internal Revenue Code dealing specifically with the treatment for income tax purposes of the "gain" or "loss" to a corporation resulting from its dealings in its own stock. The subject has been dealt with, however,· in Treasury Regulations 111, Section 29.22 (a)–15, promulgated by the Treasury Department as interpretation of the broad provisions of Section 22(a) of the Code. The Regulation states, in part:

"Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain or deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares as it might in the shares of another

1. An officer testified that employees were permitted to have stock for. morale purposes. The corporation reacquired it on an employee's severance from service.

2. The directors agreed among themselves to direct by will that their respective executors offer to sell the estate's shares to the corporation at $100 per share.

The deceased director's will so directed.

3. Upon acquisition the certificates were perforated and pasted on their stubs. On its books taxpayer listed treasury stock in an account separate from stock in other corporations. The gain on the sale of treasury stock was credited to capital surplus.

corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. * * *"

The arguments advanced by taxpayer, briefly, are that in dealing in its own stock a corporation is not buying and selling assets. "Treasury stock" is not an asset at all, but actually retired stock which may be reissued without the formalities and restrictions applicable to the issuance of new shares. The economic effect, says taxpayer, of the issuance of treasury shares is the same as that where the corporation issues shares to a subscriber in the first instance, which gives rise to no gain or loss taxwise. This, it is urged, is recognized by accepted accounting practice. In addition, runs the argument, the Regulation puts a premium on form instead of substance, since the corporation could avoid paying taxes by retiring its treasury stock and authorizing new shares. The conclusion from these contentions is that a corporation never realizes gain solely from the buying and selling of its own shares.

Even the able statement of the position by the taxpayer's experienced counsel cannot explain away that $11,800. The corporation acquired (we do not beg the question by saying bought) its shares at one price and got from passing out part of the bundle which it had acquired $11,800 more than it paid. That certainly looks like gain to a man in the street, whatever accountants might say about it.

■■ But the problem is not a new one Every court passing upon the Regulation has upheld it,[4] in a variety of circumstances and over a period of some ten years. The courts have uniformly upheld the taxation of the gain from the sale of treasury stock under it. At this late date we do not feel constrained to disagree. We share the conclusion that the regulation is a valid interpretation of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a) and that it permits the taxation as gain to a corporation of the difference between the purchase price and the selling price of its treasury shares.

The Tax Court did not hold that the Regulation was invalid, or that it had no application to the sale of treasury stock in all instances, but only that the transactions here involved were not taxable under it. The position of the Tax Court, which it has held for some time,[5] is that dealings by a corporation in its own stock carried out not with a profit motive but for such purposes as satisfying contractual obligations, equalizing shareholdings, eliminating a participant wishing to retire, implementing an employee profit sharing plan or, as in this case, keeping ownership of the corporation within a particular group, are not results which could be reached by dealing in the shares of other corporations and are therefore not taxable under the Regulation.

■■ The Commissioner takes the position that whenever a corporation reacquires its own shares, for the purpose of reselling them, holds them in its treasury instead of retiring them and later does sell them, it is dealing in its shares as in the shares of another and thus comes within the Regulation. He says that so long as there is no readjustment in capital structure the economic gain or loss to the corporation is the same regardless of the motive of the corporation in dealing in its own stock.

We agree with the Commissioner. Once it is accepted that there is gain or loss taxwise when a corporation buys and resells its own stock without retiring it, there appears no basis for any inquiry into motive. The existing cases on the subject all point

4. The retroactive application of a treasury decision almost identical with the present Regulation was held invalid in Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. The statement is accurate, however, as to its prospective operation.

5. Batten, Barton, Durstine & Osborn, Inc., 1947, 9 T.C. 448, reversed 2 Cir., 1948, 171 F.2d 474, certiorari denied 1949, 338 U.S. 816, 70 S.Ct. 56; Rollins Burdick Hunter Co., 1947, 9 T.C. 169, reversed C. I. R. v. Rollins Burdick Hunter Co., 7 Cir., 1949, 174 F.2d 698; Cluett, Peabody & Co., Inc., 1944, 3 T.C. 169; Brockman Oil Well Cementing Company, 1943, 2 T.C. 168; Dr. Pepper Bottling Co. of Miss., 1942, 1 T. C. 80.

942

to this result,[6] save those decided by the Tax Court. The emphasis has been on the final result from the buying and selling and not on motive. The determining factor has not been whether the purpose of the dealings could have been achieved by dealing in the stock of another corporation, but whether the transaction resulted in a "capital adjustment."

We hold that taxpayer has realized a taxable gain of $11,800 in this case, even though it dealt in its stock for a purpose wholly unrelated to the profit involved. Under substantially identical facts the Second and Seventh Circuits recently came to the same conclusion.[7]

There is a second issue in the case. That question has to do with the treatment of gain from the sale of the treasury stock in question in the computation of the taxpayer's invested capital and excess profits credit. Taxpayer stated orally before the Tax Court that it was a mere matter of computation which followed from the answer to the principal problem of the taxability of the gains and the Tax Court so treated it. There was almost no discussion of the point at oral argument here, but taxpayer argues in its brief that it is more than a mere matter of computation. In view of the treatment given the problem by the parties below and by the Tax Court we merely assume that if the gain on the sale of treasury stock is taxable, it may not be included as invested capital for purposes of computing the taxpayer's invested capital for excess profits credit. If taxpayer wishes to press its contention before the Tax Court on remand, it may do so.

The decision of the Tax Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

6. Second Circuit: Batten, Barton, Durstine & Osborn, Inc. v. Com'r, 1948, 171 F.2d 474, certiorari denied 1949, 338 U. S. 816, 70 S.Ct. 56; Aviation Capital, Inc. v. Pedrick, 1945, 148 F.2d 165, 160 A.L.R. 1080, certiorari denied 1945, 326 U.S. 723, 66 S.Ct. 28, 90 L.Ed. 428; Com'r v. Air Reduction Co., Inc., 1942, 130 F.2d 145, certiorari denied 1942, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546. Fifth Circuit: Allen v. National Manufacture & Stores Corp., 1942, 125 F.2d 239, certiorari denied 1942, 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753. Sixth Circuit: Dow Chemical Co. v. Kavanagh, 1943, 139 F.2d 42. Seventh Circuit:

Com'r v. Rollins Burdick Hunter Co., 1949, 174 F.2d 698. Eighth Circuit: United States v. Stern Bros. & Co., 1943, 136 F.2d 488; Brown Shoe Co., Inc. v. Com'r, 1943, 133 F.2d 582; Edison Bros. Stores, Inc. v. Helvering, 1943, 133 F.2d 575, certiorari denied 1943, 319 U.S. 752, 63 S.Ct. 1166, 87 L.Ed. 1706. Court of Claims: Edwin L. Wiegand Co. v. United States, 1945, 60 F.Supp. 464, 104 Ct.Cl. 111. See also, Investment Corporation of Philadelphia v. United States, D.C.E.D.Pa.1941, 43 F.Supp. 64.

7. Com'r v. Rollins Burdick Hunter Co. and Com'r v. Batten, Barton, Durstine & Osborn, Inc., supra.