OPINION. Withex, Judge: The only issue for determination is whether.under the circumstances presented the petitioner realized taxable gain on the sale of 14,754 shares of its own capital stock to its president in 1947. The respondent’s regulations relating to dealings by a corporation in its own capital stock are set out below.[1] The respondent takes the position that in its dealings in its own shares here involved the petitioner has dealt as it might in the shares of another corporation, and that the gain realized from the sale of the shares in question was taxable. In support of his position, he contends that unless a corporation’s dealings in its own stock effect a change in its capital structure, the resulting gain is taxable and that the purpose behind such dealings is of less importance than the results thereof. In Dr. Pepper Bottling Co. of Miss., 1 T. C. 80, petition to review dismissed (C. A. 5, Sept. 21, 1943), we were called upon to determine whether the taxpayer had realized taxable gain from certain dealings in its own shares. After discussing certain cases, we there said: We view these decisions as establishing the propositions, first, that whether a corporation’s dealings in its own stock result in tax consequences to the corporation depends upon the character and purpose of the purchase and of the sale and their relationship to each other; second, that if their true nature is a readjustment of capital, no taxable gain or loss occurs even though the result is more than a mere bookkeeping process and the outcome may in a real sense be a benefit or detriment to the corporation’s economic position; and, third, that one test of the true nature of the transaction is whether the corporation has dealt in its stock in the same way that it would in the stock of another corporation. * * * Since the respondent’s regulation provides that whether a given acquisition or disposition by a corporation of its own shares gives rise to taxable gain “depends upon the real nature of the transaction,” a consideration of the foregoing enumerated factors is requisite to a determination of the nature of the transaction. Brockman Oil Well Cementing Co., 2 T. C. 168; Cluett, Peabody & Co., 3 T. C. 169. Where the corporation’s dealings in its shares were pursuant to an agreement to effect permanent equal division of stock control, the nature of the transaction was not such as to give rise to taxable gain. Dr. Pepper Bottling Co. of Miss., supra. Nor was the nature of the dealings such as to give rise to taxable income where, upon the withdrawal of a stockholder, the corporation, with the consent of the other stockholders, acquired his shares by distributing to him a ratable portion of net assets and, thereafter, the stock was reissued, in payment on indebtedness, to another stockholder who had made a loan to the corporation. Brockman Oil Well Cementing Co., supra. In Cluett, Peabody & Co., supra, the corporation in a prior year acquired certain shares of stock as a step in an employee profit sharing plan which had not been carried out. During the taxable year the corporation disposed of to its stockholders the foregoing shares among new shares in a readjustment of its capital structure. The real nature of the disposition of all the shares was held to be a means of procuring additional capital and not such a transaction as gave rise to taxable gain. The shares involved in each of the foregoing cases were held as treasury stock and the corporations’ dealings therein in nowise resulted in any change of the capital structures of the respective corporations, a requisite which the respondent contends herein is essential to a holding that resulting gain from such dealings is not taxable. Of the 14,754 shares of petitioner’s stock involved herein, 254 shares are traceable to shares originally acquired by petitioner in 1940 as part of a purchase of its stock for distribution as additional compensation to its officers.and.key employees, as had. been its practice for several years prior thereto. The remaining 14,500 shares are traceable to 1,000 shares of stock which petitioner acquired in Bossert in 1935 in consideration of a payment of $100 and petitioner’s agreement to purchase from Bossert, at competitive prices, for a period of 5 years the sheet metal stampings requirements of itself and certain named subsidiaries. However, petitioner actually acquired said 14,500 shares of its stock as a result of the reorganization of itself and Bossert in 1946 and the dissolution of the latter as a part of the reorganization. Several months prior to the sale of the 14,754 shares of its stock the petitioner’s board of directors began discussion of ways and means to induce petitioner’s president, who had been in the employ of petitioner since 1933 and its president since 1940, to continue in its employ for an extended future period. As a result of the discussions, the president offered to buy, and petitioner sold to him, its shares. Viewing the situation here in the light of the holdings in the cases mentioned above, we have concluded, contrary to respondent’s contention, that in acquiring and disposing of the shares in question the petitioner was not dealing in its own shares as it would those of another corporation. In our view the real nature of the transactions was to provide petitioner’s officers and key employees with increased proprietorship interests in the petitioner with a view to the retention of their services, and in the case of the president to the retention of his services for an extended future period. Furthermore, as a part of his offer to purchase the shares in question, petitioner’s president warranted that he was purchasing such shares for investment and not for resale. Upon petitioner’s acceptance of the offer, the president became bound by his warranty. Consequently, upon acquiring the shares, he could not, without breach of his warranty, thereupon use them for the purpose of resale. Under the warranty his use of them was restricted to investment purposes. The foregoing restrictions serve to distinguish the situation here from that presented in Juvenile Shoe Corporation of America, 17 T. C. 1186, In that case there was no restriction whatever as to the use that might be made of the shares involved. Brown Shoe Co., 45 B. T. A. 212, affd. 133 F. 2d 582, is distinguishable from the instant case on the same ground. So far as shown the purchasers in that case were free to use their shares for any purpose they might wish. In view of what has been said above, we hold that petitioner did not realize any taxable gain on the sale of its shares to its president. In reaching the foregoing conclusion we have considered the cases relied on by respondent, including Commissioner v. Batten, Barton, Durstine & Osborn, Inc., (C. A. 2) 171 F. 2d 474; Commissioner v. H. W. Porter & Co., (C. A. 3) 187 F. 2d 939; and also Commissioner v. Rollins Burdick Hunter Co., (C. A. 7) 174 F. 2d 698, in which views contrary to those taken herein were expressed and onr holdings therein were reversed. With due deference to those views, we feel that the position here taken is proper on the situation presented. Decision will be entered under Rule 50. Regulations 111, section 29.22 (a)r-15, provides : Acquisition oa Disposition by a Corporation op Its Own Capital Stock. — Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock. But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code.